Cause No. **076-15**

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

ORIGINAL

TRIAL NO. CR-13-214

| | | |
|---|---|---|
| JAMES EARL PILAND | § | |
| Petitioner | § | IN THE 4th |
| vs. | § | JUDICIAL DISTRICT COURT |
| THE STATE OF TEXAS | § | OF RUSK COUNTY, TEXAS |
| Respondent | § | |

FILED IN
COURT OF CRIMINAL APPEALS

MAR 20 2015

Abel Acosta, Clerk

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 18 2015

Abel Acosta, Clerk

## PETITION FOR DISCRETIONARY REVIEW

James Earl Piland #1919190
Alfred Stringfellow Unit
1200 F.M. 655
Rosharon, Texas 77583

ORAL ARGUMENT WAIVED

## IDENTITY OF PARTIES

### TRIAL JUDGE PRESIDING

The Honorable Judge Gossett
Courthouse, 115 Main St., Room 303
Henderson, Texas 75652
Telephone #(903)657-0358

### APPELLATE JUSTICES

The Honorable Justice Carter
The Honorable Justice Moseley, J.J
Chief Justice C.J. Moriss
Sixth Court of Appeals
Bi-State Justice Bldg.
100 N. State Line Ave., No 20
Texarkana, Texas 75501-5666

### PETITIONER

### TRIAL DEFENSE ATTORNEY

Allison Biggs, Atty-at-Law
300 W. Main St.
Henderson, Texas 75652
Telephone #(903)657-8195

### DIRECT APPEAL ATTORNEY

T.W. Davidson, Atty-at-Law
329 S. Fannin Avenue
Tyler, Texas 75702
Telephone #(903)535-9600

### RESPONDENT

### PROSECUTOR AND APPELLATE COUNSEL

Richard Kennedy, Atty-at-Law
Zack Wavrusa, Atty-at-Law
115 N. Main St., Room 302
Henderson, Texas 75652-3147
Telephone #(903)657-2265

## TABLE OF CONTENTS <span>PAGE #</span>

IDENTITY OF PARTIES........................................... i

TABLE OF CONTENTS............................................. ii-iii

INDEX OF AUTHORITIES.........................................

STATEMENT REGARDING ORAL ARGUMENT............................

I. STATEMENT OF THE CASE..................................... 1-3

II. STATEMENT OF PROCEDURAL HISTORY......................... 3-4

III. GROUNDS FOR REVIEW..................................... 4

1. Judicial Misconduct - Was evidence factually and legally sufficient to support the conviction?

2. Legal and Factual Insufficiency of Evidence - Is the indictment so flawed that the jury convicted the Defendant of the wrong offense under the Texas Penal Codes?

3. Void Judgment - Did the trial judge abuse his discretion in his failure to allow Defense Attorney to properly prepare for trial - denying the Petitioner a fair trial with effective counsel?

4. Ineffective Assistance of Counsel - Was defense counsel ineffective for failure to file a Motion for Jury Instruction on a Lesser-Included offense?

5. Ineffective Assistance of Counsel - was defense counsel ineffective for her failure to investigate and bring to trial the Petitioner's version of the facts?

6. Ineffective Assistance of Counsel - was defense counsel ineffective when she admitted she was ineffective at trial due to trial judges actions?

7. Prosecutorial Misconduct - Prosecutor failed to give Defense Counsel full notice of enhancement of charges until a half hour prior to Voir Dire?

<u>TABLE OF CONTENTS</u>                  <u>PAGE #</u>

IV. ARGUMENT AND AUTHORITIES................................ 5-23

PRAYER FOR RELIEF.......................................... 23-24

VERIFICATION.............................................. 24

CERTIFICATE OF SERVICE.................................... 25

APPENDIX A

    Opinion of the Sixth Court of Appeals at Texarkana

| FEDERAL STATUTES | INDEX OF AUTHORITIES | PAGE # |
|---|---|---|
| Rules of Criminal Procedure, Rule 60(b)................ | | 11 |
| 28 U.S.C..§1746.............................. | | 24 |

**SUPREME COURT REPORTER**

| | | |
|---|---|---|
| Berger v. U.S., 55 S.Ct. 629 (1985)................... | | 23 |
| Cronic v. U.S., 104 S.Ct. 2039 (1984)............... | | 12 |
| Cuyler v. Sullivan, 100 S.Ct. 716 (1978),............ | | 20 |
| Haines v. Kerner, 92 S.Ct. 594 (1972).............. | | 5 |
| Hughes v. Rowe, 101 S.Ct. 173 (1988).............. | | 5 |
| In Re Winship, 99 S.Ct. 1073 (1978)............... | | 22 |
| Jackson v. Virginia, 99 S.Ct. 2781 (1978)........... | | 7,22 |
| Johnson v. Lamb, 120 S.Ct. 522 (1999)............. | | 17 |
| Liparota v. U.S., 105 S.Ct. 2084 (1985)............. | | 22 |
| Maxwell v. Sheppard, 86 S.Ct. 1507 (1966)........... | | 11 |
| Namet v. U.S., 83 S.Ct. 1151 (1963)................ | | 21 |
| Rompilla v. Beard, 125 S.Ct. 2456 (2005)........... | | 19 |
| Skinner v. State, 118 S.Ct. 1526 (1998)............ | | 15 |
| Snyder v. Commonwealth of Mass., 54 S.Ct. 330 (1934)......... | | 11 |
| Strickland v. Washington, 104 S.Ct. 2052 (1984)............ | | 12,17,19,20 |

**FEDERAL REPORTER**

| | | |
|---|---|---|
| Johnson v. Lamb, 179 F.3d 352 (___ Cir 1999)............. | | 17 |
| Rogers v. Israel, 746 F.2d 1288 (__ Cir 1984).............. | | 19 |
| Rommel v. Estelle, 590 F.2d 103 (5th Cir 1979)............. | | 17 |
| Washington v. Strickland, 693 F.2d 1243 (5th Cir 1982)......... | | 16 |
| Wiggins v. Procunier, 753 F.2d 1318 (5th Cir 1985)............ | | 5 |

**TEXAS STATUTES**

| | | |
|---|---|---|
| Texas Penal Code § 4.31(c)........................... | | 14 |
| Texas Penal Code § 9.31(c)(1)(2)..................... | | 6,8 |
| Texas Penal Code § 22.01............................ | | 5,23 |
| Texas Penal Code § 22.01(b)(1)...................... | | 5 |
| Texas Penal Code § 38.03(a)......................... | | 8 |
| Texas Rules Of Appellate Procedure, Rule 66.3.......... | | 23 |
| Texas Rules Of Appellate Procedure, Rule 68.1.......... | | 1 |

iv

Aguilar v. State, 682 S.W.2d 556 (Tx.Cr.App. 1985)............. 13

Barbernell v. State, 257 S.W.3d 248 (Tx.App. 2008)............. 22

Bell v. State, 693 S.W.2d 434 (Tx.Cr.App. 1985).............. 14

Bermudez v. State, 533 S.W.2d 806 (Tx.Cr.App. 1976)........... 22

Bignall v. State, 887 S.W.2d 21 (Tx.Cr.App. 1984)............ 9,14

Emery v. State, 881 S.W.2d 702 (Tx.Cr.App. 1994)............. 7

Ex Parte Barfield, 697 S.W.2d 307 (Tx.Cr.App. 1985)........... 7

Ex Parte Harris, 596 S.W.2d 293 (Tx.Cr.App. 1980)............ 12

Ex Parte Seaton, 580 S.W.2d 593 (Tx.Cr.App. 1979)............ 22

Ex Parte Welborn, 785 S.W.2d 391 (Tx.Cr.App. 1990)............ 19

Hampton v. State, 66 S.W.3d 430 (Tx.App.-Houston [1st Dist]
2001)......................................................... 10

Jiminez v. State, 953 S.W.2d 293 (Tx.App.-Austin 1997)........ 10,11,15,20

Jones v. State, 586 S.W.2d 542 (Tx.Cr.App. 1979)............. 13

Jones v. State, 984 S.W.2d 254 (Tx.Cr.App. 1998)............. 9,14

Kerns v. State, 550 S.W.2d 91 (Tx.Cr.App. 1977)............. 23

Lofton v. State, 6 S.W.3d 796 (Tx.Cr.App. 2001).............. 9,10,11,13,14,
                                                               15,20

Lofton v. State, 45 S.W.3d 649 (Tx.Cr.App. 2001)............. 9,10,14

Mathis v. State, 67 S.W.3d 918 (Tx.Cr.App. 2002)............. 10,13

Mitchell v. State, 807 S.W.2d 740 (Tx.Cr.App. 1991).......... 10,15

Nethery v. State, 692 S.W.2d 686 (Tx.Cr.App. 1985)........... 9

Ortiz v. Jones, 917 S.W.2d 770 (Tx.Cr.App. 1996)............ 7

Preston v. State, 700 S.W.2d 227 (Tx.Cr.App. 1985)........... 13

Prudhome v. State, 989 S.W.2d 852 (Tx.App.-Houston [14th Dist]
1999)......................................................... 22

Reed v. State, 703 S.W.2d 380 (Tx.Cr.App. 1986).............. 9

Rickens v. State, 165 S.W.3d 675 (Tx.Cr.App. 2005)........... 13

Rousseau v. State, 855 S.W.2d 666 (Tx.Cr.App. 1993).......... 13,14

Royster v. State, 622 S.W.2d 442 (Tx.Cr.App. 1981)........... 13

Ruth v. State, 552 S.W.2d 517 (Tx.Cr.App. 1975)............. 23

Saunders v. State, 913 S.W.2d 564 (Tx.App.-Corpus Christi 1994) 10,11,15,20

Skinner v. State, 956 S.W.2d 532 (Tx.Cr.App. 1997)........... 15

Smith v. State, 676 S.W.2d 584 (Tx.Cr.App. 1984)............. 9

Sutton v. State, 548 S.W.2d 697 (Tx.Cr.App. 1977)............ 13

Cause No. _____

## IN THE
## COURT OF CRIMINAL APPEALS
## OF TEXAS

| | |
|---|---|
| JAMES EARL PILAND<br>Petitioner | § IN THE 4th |
| vs. | § JUDICIAL DISTRICT COURT |
| THE STATE OF TEXAS<br>Respondent | § OF RUSK COUNTY, TEXAS |

## PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGE(s) OF SAID COURT:

COMES NOW, James Earl Piland, Petitioner, pro-se in the above styled and numbered cause, and respectfully files this Petition for Discretionary Review pursuant to Rule 68.1, T.R.A.P. The Petitioner would show the Honorable Court the following:

## I. STATEMENT OF THE CASE

On the evening of 21 April, 2003, the Petitioner and his wife discovered that their son and his friend had been stealing money from them out of their bedroom. So to curtail any further thefts, the Petitioner woke his son, Tyler, to help him put a door on his bedroom. During this time, a heated argument began, leading to the Petitioner telling his wife to call the police. In the meantime the Petitioner went into a nearby woods in order to remove himself from further altercations, and to calm down.

It had already grown dark outside, and the Petitioner was barefoot. After a short time the Petitioner heard several voices calling his name. He heard a noise and a bright light was shined into his face, blinding him. The Petitioner believed it was his son and Wesley Watkin, his son's friend. He turned

-1-

to walk further into the woods, but stepped on something sharp, and fell down. The bright light was again shined into the Petitioner's eyes, and a voice ordered him to "get up and come over here." The Petitioner stood up and tried to see who it was, because there were several people calling him. The Petitioner's hands were in front of his eyes, trying to block the light. He was told to put his hands down, and when he did, he was hit with either a gun or flashlight. These were the only things in the person's hands that had hit him. At the same time, someone else began spraying something in the Petitioner's face and eyes. The Petitioner's vision went black, and he fell against his boat. As the Petitioner walked towards his house, the officer continued hitting him in the face, while the other officer kept spraying mace everywhere. The Petitioner's son saw the officer strike the Petitioner with his gun or flashlight and jumped on his back. The Petitioner ran into his house for safety, and to clean mace out of his eyes and mouth. E.M.S. had to be called, as the officer had sprayed the Petitioner's 11 year old daughter in the face, and needed her eyes flushed out. At no time were handcuffs put on Petitioner nor did the officers announce who they were. Two other officers were called in to arrest Petitioner. Officer Overton testified that Petitioner offered no resistance when Petitioner was hand-cuffed. The other officer from another city, took me out of the house, then yanked the cuffs up behind Petitioner's back, forcing Petitioner to bend over at the waist, hurting Petitioner's wrists, hands, and shoulders. This also was recorded on the 2nd video, but was not shown to the jury.

Officer Loden claimed I rushed at him out of the woods, but changed his testimony when cross-examined to "a fast pace." He would also commit perjury, stating he never struck the Petitioner at all. Then later admit stricking the Petitioner on the side of the face "3 or 4 times." (R.R. 4 at 151,153).

-2-

Note, testimony from eyewitnesses show he also struck the Petitioner with an object between his eyes Loden then wrote up multiple charges against the Petitioner in attempts to cover his felonious assault on the Petitioner that Loden knew was witnessed by others. The Petitioner was then taken to jail and charged with "assault against a public servant." During pre-trial hearing the trial judge asked the defense attorney if she was prepared to go to trial. She stated "no" because she and the prosecutor were working on a plea deal due to the multiple charges. But the judge ignored her and set the case for trial the next day, despite their being multiple other cases on the Docket before the Petitioner's case.

The Petitioner was tried and convicted by a jury. Punishment was assessed at sixteen (16) years confinement in the TDCJ-CID. A Motion For Appeal was filed at trial.

On 17 December, 2014, the Sixth Court of Appeals of Texas at Texarkana affirmed the conviction. On 1/22/2015 the Texas Court of Criminal Appelas granted the Petitioner's pro-se Motion For Extension of Time to file Motion for Petition For Discretionary Review. The time extension was until March 17, 2015.

This timely filed Petition For Discretionary Review follows.

<u>NO ORAL ARGUMENT IS REQUESTED</u>

**II. STATEMENT OF PROCEDURAL HISTORY=**

1. The Petitioner appeared before the Fourth Judicial District Court of Rusk County, Texas, on the charge of assault of a public servant on 2-18-2014. The jury found the Petitioner guilty, and assessed punishment at (16) sixteen years confinement in the Texas Department of Criminal Justice-Correctional Institutional Division.

2. A Motion for Appeal was requested at trial. Defense Counsel filed a

-3-

Direct Appeal in the 6th Appellate District Court of Appeals of Texas at Texarkana. The Appellate Court affirmed the Petitioner's sentence on 17 December, 2014. **No Motion for Rehearing was filed**.

**3.** The Petitioner filed a Motion for Extension of Time to file Petition for Discretionary Review. **This was granted on 1/22/2015**.

This timely Petitioner's Petition For Discretionary Review follows.

## III. GROUNDS FOR REVIEW

**ISSUE 1** - Was the evidence factually and legally sufficient to support the conviction.

**ISSUE 2** - Is the indictment so flawed that the jury convicted the Defendant of the wrong offense under the Texas Penal Codes? (R.R. 4, at 163).

**ISSUE 3** - Did the trial judge abuse his discretion in his failure to allow Defense Attorney to properly prepare for trial - denying the Petitioner a fair trial with effective counsel?

**ISSUE 4** - Was defense counsel ineffective for failure to file a Motion for Jury Instruction on a Lesser-Included Offense?

**ISSUE 5** - Was defense counsel ineffective for her failure to investigate and bring to trial the Petitioner's version of the facts? (See Brief for Appellant, pg. 12-14 Direct Appeal)

**ISSUE 6** - Was defense counsel ineffective when she admitted she was ineffective at trial due to trial judge's actions? (See Brief for Appellant, pg. 12-14 (Direct Appeal))

**ISSUE 7** - Prosecutorial misconduct - Prosecutor failed to give Defense Counsel full notice of enhancement of charge until a half hour prior to Voir Dire. Then it was faxed to her office, not given at trial. Was this prosecutor misconduct?

**NOTE:** The Petitioner is not a licensed attorney and has no legal training

-4-

at all. The Petitioner therefore, prays this Honorable Court not hold him to the same stringent standards as a licensed attorney pursuant to **Wiggins v. Procunier**, 753 F.2d 1318 (5th Cir. 1985); **Hughes v. Rowe**, 101 S.Ct. 173 (1988); **Haines v. Kerner**, 92 S.Ct. 594 (1972).

**NOTE**: The Petitioner does not have access to the Recorder's Record, and has had to rely on the Briefs from Appellant Counsel to refer to page numbers in record.

## IV. ARGUMENTS AND AUTHORITIES

**ISSUE 1**: <u>Was the evidence factually and legally sufficient to support the conviction?</u>

In the case at bar, the charge instructs the jury to determine guilt based on whether the Petitioner "did...cause bodily injury to Brad Loden, by striking the said Brad Loden with the Defendant's fists while the said Brad Loden was trying to arrest the defendant, and the said Brad Loden was then and there a public servant, to wit: a police officer...acting in lawful discharge of his official duty, and the defendant knew that the said Brad Loden was a public servant because the said Brad Loden was wearing a distinctive uniform and displaying his badge..."

First, note the charge read to the jury does not conform to Texas Penal Code § 22.01(a), 22.01(b)(1), in that it has no reference to "intentionally, knowingly, or recklessly" listed in the charge.

The Court will note the incident took place in the dark. Loden nor Officer Wilson identified themselves, nor could ANY distinctive uniform or badge be seen as their uniforms were dark blue. Especially with a bright light shined into the Petitioner's face, nor with the spraying of mace into his eyes by officer Wilson.

Officer Loden states the Petitioner swung with his fist hitting his arm.

The Honorable Court must admit this act likely occurred NOT to assault Officer Loden, but to get the light out of his blinded eyes or to stop the spraying of mace in them. (R.R. 4, pg. 19, 35, 38, 64). The Petitioner supposedly fled, and when someone caught hold of his shirt, he knocked the arm of his captor and fled into his house. (R.R. 4, pg. 19-21, 35, 68). Others saw Loden hitting Petitioner at the time. Witnesses testified they saw Officer Loden hit the Petitioner between the eyes with his gun or flashlight. Officer Loden denies this. But then, he also denied hitting the Petitioner at all, (R.R. at 151); but then admits hitting him "3 or 4 times on the side of the face." Yet the Petitioner had an injury between his eyes on the upper part of his nose - the place where the witnesses testified they saw him hit the Petitioner with an object in his hand. So the question before this Honorable Court is, seeing the witnesses did not see the "3 or 4 blows to the Petitioner's face, was, by Office Loden's own testimony, the Petitioner beat on by Loden in the woods as alleged by the Petitioner?

Pursuant to Texas Penal Code § 9.31(c)(Vernon 2003),

"(c)   The use of force to resist an arrest or search is justified:
  (1) if, before the actor offers any resistance, the peace officer (or person acting at his direction) uses or attempts to use greater force than necessary to make the arrest or search; and
  (2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's (or other persons) use or attempted use of greater force than necessary."

It should also be noted, when arrested by the two other officer's, the Petitioner had no handcuffs on either wrist, as testified to by Officer Wilson and Loden. (R.R. 4 at 19). But defense counsel failed to call either of those officers to testify on this crucial issue. A video was taken of this

arrest, but was not shown.

The Petitioner states he did not know police were there until he'd been sprayed in the eyes with mace. Then he swung his arm to stop the pain and ran to his house to rinse out his eyes and get away from whoever had hurt him.

"A critical inquiry is whether, after so viewing the evidence, any rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt." **Emery v. State,** 881 S.W.2d 702, 705 (Tx.Cr.App. 1994). But there is a problem here because the Jury Charge was insufficient. First, the "mens rea" is missing which is in fact an essential element of the charge.

"In evaluating the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier-of-fact could have found the essential elements of the offense beyond a reasonable doubt." **Jackson v. Virginia,** 99 S.Ct. 2781(1979).

"Where appellate attacks legal sufficiency of the evidence, appellate Court must view only that evidence which supports the verdict, however, where appellant's challenge is to factual sufficiency of evidence appellate court must consider all evidence. Court of Appeals must weigh and compare all evidence in the record." **Ortiz v. Jones,** 917 S.W.2d 770 (Tx.Cr.App. 1996).

"Only exception to sufficiency of evidence is if you show there was no evidence on crucial element of the offense with which you were convicted." **Ex Parte Barfield,** 697 S.W.2d 307 (Tx.Cr.App. 1985).

No "mens rea" was ever shown in the trial.

Due process was denied to the Petitioner, and as such, he is entitled to a reversal of his conviction, and be afforded a new trial.

**ISSUE 2.** Is the indictment so flawed that the jury convicted the Defendant on the wrong offense under the Texas Penal Codes?

During Officer Loden's testimony, he states the Petitioner resisted when the first handcuff was locked on his wrist. He then testified he told the Petitioner if he continued struggling he would spray him with C.J. (mace). He stated the Petitioner was not under arrest, so why come with a drawn weapon, handcuff the Petitioner, or even use mace on him? He got struck on his arm after macing the Petitioner. Probable reason was to get released so Petitioner could rinse the mace from his burning eyes. So, at best, the only true charge that could possibly be put upon the Petitioner was "resisting arrest", and not assault. Otherwise, what cause did Officer Loden have for admittingly striking the Petitioner "3 or 4 times" in the face. In all actuallity, the Petitioner would have been justified under § 9.31(c) Tx.Pen.Code in striking back in self defense. Especially when witnesses saw Officer Loden strike him in the face with an object in his hand. The only objects being his flash-light and gun, as was witnessed by the witnesses. Also by Loden's own testimony. (R.R. 4 at 151).

If an arrest was being executed, then a charge of resisting arrest under Texas Penal Code § 38.03(a) would be appropriate.

"A person resists arrest by intentionally preventing or obstruct[ing] a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from affecting an arrest, search, or transportation of an actor by using force against the peace officer or another."

But, in the case at bar, no Motion was filed by defense counsel to have the Court instruct the jury on the lesser-included offense of resisting arrest.

In order to be entitled to an instruction on the lesser-included offense of resisting arrest, there must be some evidence to permit a jury rationally to find that appellant is guilty only of the lesser, and not of the greater.

-8-

Therefore, in the instant case, there must be some evidence that Appellant intentionally prevented or obstructed his arrest by using force against officer [Loden], and that Appellant did not 'intentionally, knowingly, or recklessly cause bodily injury to [Loden]." Lofton v. State, 45 S.W.3d 649 (Tx. Crim.App. 2001).

"Court of Appeals analyzes lesser-included offenses by determining whether there is any evidence in the record from any source to indicate that if defendant was guilty, he was guilty only of the lesser offense." Lofton v. State, Id., 6 S.W.3d at 797. "Anything more than a scintilla of evidence is sufficient to entitled a defendant to a lesser charge." Lofton, supra, at 799; Bignall v. State, 887 S.W.2d 21, 23 (Tx.Crim.App. 1994). "Whether there is evidence within or without the defendant's testimony, which raises the lesser offense controls the issue of whether an instruction on the lesser included offense should be given." Jones v. State, 984 S.W.2d 254, 257 (Tx. Crim.App. 1998).

"Although it is clear that the issue of self-defense may be raised by evidence other than the defendant's testimony, (See Smith v. State, 676 S.W.2d 584 (Tx.Crim.App. 1984), it is equally clear that some evidence must show that defendant reasonably believed that force was necessary to protect himself against unlawful force of another." Nethery v. State, 692 S.W.2d 686,704 (Tx.Crim.App. 1985); Reed v. State, 703 S.W.2d 380, 382 (Tx.Crim.App. ____).

That evidence was provided by witnesses seeing Loden strike an unarmed Petitioner between the eyes with an object, AND by Loden's own testimony of spraying the Petitioner with gas and further testimony of him striking the Petitioner 3 or 4 times in the face.

"For a charge on a lesser-included offense to be given, there must be some evidence from which a jury could rationally acquit the defendant of

the lesser included offense; the evidence must establish the lesser-included offense as a valid alternative to the charged offense." Mathis v. State, 67 S.W.3d 918, 920 (Tx.Crim.App. 2002).

"Either the defendant or the State is entitled to an instruction on every issue raised by the evidence, whether produced by the State or the defendant, and whether it is weak, strong, impeached, or contradicted; it is then the jury's duty to determine whether the evidence is credible and supports the lesser-included offense." Hampton v. State, 66 S.W.3d 430 (Tx.App.-Houston [1st Dist] 2001). "The Court of Appeals held that because the evidence in this case was subject to two possible interpretations - one interpretation supporting a conviction of assault and the other for resisting arrest - then appellant was entitled to an instruction on the lesser-included offense." Lofton, supra, 45 S.W.3d at 653.

"Reversal is required if the error resulted in some harm to the accused, 'some' meaning 'any'." Jiminez v. State, 953 S.W.2d 293, 299 (Tx.App.-Austin 1997, pet. ref'd). "If the absence of the lesser-included offense instruction left the jury only with the options either to convict the defendant of the charged offense or to acquit him [as the case at bar], a finding of harm is essentially automatic because the jury was denied the opportunity to convict the defendant of the lesser offense." Lofton, 6 S.W.3d at 800; see also: Mitchell v. State, 807 S.W.2d 740, 742 (Tx.Crim.App. 1991); Jiminez, supra, at 299 (citing Saunder v. State, 913 S.W.2d 564, 571 (Tx.App.-Corpus Christi, 1994). "Harm is presumed because of the possibility that the jury, believing the defendant to have committed some crime but given the option only to convict him of the greater offense, may have chosen to find him guilty of that greater offense, rather than to acquit him altogether, even though it had a reasonable doubt that he really committed the greater offense."

See **Saunders**, supra, at 571; **Jiminez**, supra, at 300. "we cannot say that the district court's refusal to instruct the jury on the lesser-included offense of resisting arrest did not result in some harm to appellant." **Lofton**, 6 S.W.3d at 800.

Failure to properly instruct the jury on "mens rea" and present a proper indictment, including the lesser-included offense of resisting arrest violated due process of law. A reversal and a new trial is warranted due to a VOID indictment. (Rule 60(b), F.R.A.P.)

**ISSUE 3:** <u>Did the Trial Judge abuse his discretion in his failure to allow both the prosecutor and defense counsel to properly prepare for trial, thus denying the Petitioner a fair trial with effective Counsel?</u>

"Broadly stated, the accused is entitled to a trial on the facts, in accordance with the law and the evidence in the case, with an opportunity to defend before an unbiased tribunal, and free from any extraneous influence that might be to his or her prejudice." **Maxwell v. Sheppard**, 86 S.Ct. 1507 (1966).

"State is free to regulate court procedure in accordance with its own conception of policy and fairness without infringing on 14th Amendment, unless some fundamental principle of justice is violated." **Snyder v. Commonwealth of Massachusetts**, 54 S.Ct. 330 (1934).

In the instant case at bar, the Trial Judge asked the Prosecutor and Defense Counsel if they were prepared to go to trial. The Prosecutor stated they were ready. The Defense Counsel stated they were not ready, as the prosecutor and she had been working out a plea deal, due to the multiple other charges connected with this case. (Officer Loden had also brought charges of public intoxication (Petitioner was on his own property), resisting arrest (lesser-included offense), threat of retaliation, aggravated assault, and assault

-11-

of public servant (for supposedly tearing his shirt).(NOTE: If Petitioner tore his shirt, why was it not testified to at trial, or shown as evidence?)). The Trial Judge then ordered the case set for Docket the very next day. By his actions, the Petitioner went to trial with an attorney who admittedly was not prepared to defend her client.

Thus, the Petitioner was denied effective assitance at trial by the Trial Judge, which denied him due process and equal protection. "That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command." **Strickland v. Washington**, 104 S.Ct. 2052 (1984).

"Actual or constructive denial of assistance of counsel altogether is legally presumed to result in prejudice." Id., at 2053.

"Right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability to the accused to receiv a fair trial." U.S.C.A. 6; **Cronic v. U.S.**, 104 S.Ct. 2039 (1984).

"Mere pro Forma appearance of counsel does not amount to the assistance of counsel and due process of law guaranteed by federal constitution and it does not afford the right of being heard by...counsel guaranteed by state constitution. Such unconstitutional provisions require that counsel render reasonably effective assistance." **Ex Parte Harris**, 596 S.W.2d 293 (Tx.Crim. App. 1980).

Thus, by the Trial Judge's refusal to allow defense counsel more time to prepare her client's case for trial, Petitioner was denied effective assistance of counsel. NOTE: In the Appellate Brief during the direct appeal, the defense counsel wholeheartedly admits she was ineffective.

The conviction should be reversed, and the Petitioner be afforded a new trial in a different court, as the trial judge has shown bias against the

Petitioner or his attorney by refusing a continuance, violating due process and effective assistance of counsel to the Petitioner.

**ISSUE 4:** <u>Was defense counsel ineffective in failing to file a Motion for Jury Instruction on Lesser-Included Offense of Resisting Arrest?</u>

"Under certain, limited circumstances, a criminal defendant will be entitled to a jury instruction on a lesser-included offense of the offense charged." <u>Mathis v. State</u>, supra, at 925 (Tx.Crim.App. 2002).

"The applicable test is referred to as the Royster-Rousseau test, or sometimes, as the Royster-Aguilar test." (See <u>Royster v. State</u>, 622 S.W.2d 442, 444 (Tx.Crim.App. 1981); <u>Aguilar v. State</u>, 682 S.W.2d 556, 558 (Tx.Crim. App. 1985); <u>Rousseau v. State</u>, 855 S.W.2d 666, 672 (Tx.Crim.App. 1993).

"The test has two steps: (1) first, determine whether the offense is a lesser-included offense of the offense charged; and (2) second, evaluate the evidence to determine whether there is some evidence that would permit a jury rationally to find the defendant is guilty only of the lesser offense." <u>Mathis</u>, supra, at 925; See also: <u>Rickens v. State</u>, 165 S.W.3d 675, 679 (Tx. Crim.App. 2005).

"Case law from the Court of Appeals indicates resisting arrest is a lesser-included offense of assault on a public servant." See: <u>Preston v. State</u>, 700 S.W.2d 227, 230 (Tx.Crim.App. 1985); <u>Sutton v. State</u>, 548 S.W.2d 697, 699 (Tx.Crim.App. 1977)(stating that "resisting arrest is a lesser-included offense of assault on a public servant."). <u>Lofton v. State</u>, 6 S.W.3d 796 (Tx.App.-Austin 1999). "...relevant test is whether the lesser offense could be proved by the same facts necessary to establish the offense charged." <u>Picken</u>, supra, at 679; <u>Jones v. State</u>, 586 S.W.2d 542, 545 (Tx.Crim.App. 1979).

Now, the Officer, Loden, stated they were attempting to handcuff the Petitioner. Another Officer, Wilson, sprayed Petitioner in the face with mace.

The Petitioner "fled" and he tried to grab the Petitioner by the back of his shirt when his arm was struck by the Petitioner. Pursuant to Tx.Pen. Code, § 4.31(c), the Petitioner was justified in his actions, as he was being maced, beaten, and felt threatened by the excessive force used against him. Is it not rather suprising after Loden had struck Petitioner "3 or 4 times on the side of the face" and between the eyes with an unknown object, that the Petitioner only struck Loden's arm? After all, Loden was assaulting the Petitioner, as Loden testified to (R.R. 4 at 151) and as other eyewitnesses testified to.

"In order to be entitled to an instruction on the lesser offense of resisting arrest, there must be some evidence to permit a jury rationally to find the appellant is guilty only of the lesser, and not of the greater. Therefore, in the instant case, there must be some evidence that appellant intentionally prevented or obstructed his arrest by using force against Officer [Loden], and the appellant did not 'intentionally, knowingly, or recklessly cause bodily injury to [Loden].'" __Lofton__, 45 S.W.3d 649.

"Court of appeals analyzes lesser included offenses by determining whether there is any evidence in the record from any source to indicate that if defendant was guilty, he was guilty only of the lesser offense," __Lofton__, 6 S.W.3d at 797. "Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge." Id., at 799; __Bignall__, supra, at 23. "Whether there is evidence, with or without the defendant's testimony, which raises the lesser offense controls the issue of whether an instruction on the lesser included offense should be given." __Jones__, supra, at 257.

"The evidence may be proffered by the State or the defense; the evidence may be strong or weak, unimpeached or contradicted." (See __Rousseau__, supra, at 672; __Bell v. State__, 693 S.W.2d 434, 442 (Tx.Crim.App. 1985). "So long as

there is some evidence which is 'directly germane' to a lesser included offense for the fact finder to consider, then an instruction on the lesser included offense is warranted." See: **Skinner v. State**, 956 S.W.2d 532, 543 (Tx.Crim. App. 1997); cert denied, 118 S.Ct. 1526 (1998).

[R]eversal is required if the error resulted in some harm to the accused, 'some' meaning 'any'." **Jiminez**, supra, at 299 (Tex.App.-Austin 1997, pet. ref'd). "If the absence of the lesser included offense instruction left the jury only with the options either to convict the defendant of the charged offense or to acquit him [as in the instant case at bar], a finding of harm is essentially automatic because the jury was denied the opportunity to convict the defendant of the lesser offense." **Lofton**, 6 S.W.3d at 800; see also: **Mitchell**, supra, at 742.(Tx.Crim.App. 1991); **Jiminez**, supra, at 299 (citing **Saunders v. State**, 913 S.W.2d 564, 571 (Tx.App.-Corpus Christi 1994).

"Harm is presumed because of the possibility that the jury, believing the defendant to have committed some crime but given the option only to convict him of the greater offense, may have chosen to find him guilty of that greater offense, rather than to acquit him altogether, even though it had a reasonable doubt that he really committed the greater offense." See: **Saunders**, supra, at 571; **Jiminez**, supra, at 300. We cannot say that the district court's refusal to instruct the jury on the lesser included offense of resisting arrest did not result in some harm to appellant." **Lofton**, 6 S.W.3d 800 .

The failure to give the jury a jury instruction on the lesser-included offense, despite having all the essential elements that supported such an instruction was ineffectiveness of trial counsel for her failure to investigate and question eyewitnesses. Likely this was caused by the Judge's failure to postpone the trial for the trial counsel to make the required pre-trial investigation.

-15-

As such, due process and effective assistance of counsel was denied by defense counsel and the trial judge, and a reversal of this conviction and a new trial is warranted in this case.

**ISSUE 5:** Was Defense Counsel ineffective for her failure to investigate and bring to trial the Petitioner's version of the facts? (See Appellate Brief for Direct Appeal, pgs. 12-14).

As can be seen by para. I Statement of the Case, the case the jury heard, and para. I are quite different. Yet witnesses that testified for the defense testified what is shown in para. I. Yet defense counsel did not have the Petitioner testify, nor submit a Motion for Jury Instruction on the Lesser-Included Offense of Resisting Arrest. She failed to make an adequate investigation and believe her client's version of the facts of the case, which was wholely supported by eyewitnesses.

"Although the fate of a criminal defendant is determined at trial, the cause of that trial, the cause of that trial can be decisively affected by actions of defense counsel in preparing the case." <u>Washington v. Strickland</u>, 693 F.2d 1243 (5th Cir 1982).

The Petitioner alleges failure to render an adequate investigation into the case, and to believe the Petitioner and eyewitness accounts of the facts of the case. This can be shown by the fact that even prior to trial a plea deal was being negotiated to settle other charges being filed by Officer Loden, the person who in fact committed aggravated assault on the Petitioner. Pictures and statements supported the Petitioner's version of the facts, yet not even a Motion for the jury instruction on the lesser offense was filed.

"When a defendant alleges that his counsel's failure to investigate prevented counsel from making an informed tactical choice, he must show that know-

-16-

ledge of the investigated evidence would have altered his counsel's decision, and that the basis underlying his counsel's tactical choice to pursue or forgo a particular course would have been invalidated, in order to satisfy prejudice prong of ineffective assistance of counsel claim." Johnson v. Lamb, 179 F.3d 352, cert.denied, 120 S.Ct. 522 (1999).

As has been testified to at trial by Rebecca Piland, Wesley Watkins, and Tyler Chiasson, all the actions committed by the Petitioner were in fact "self-defense maneuvers" to protect himself from being beaten upon by Loden. (R.R. 4 at 92-94, 106, 120-122, 125, 129-133, 142-147) Had defense counsel investigated into the Petitioner's version of the facts, she would have not only filed for Instruction on Lesser-Included offense, but also sought criminal charges against Loden for police brutality. Instead the defense counsel was plea bergaining with the prosecutor on dropping the other charges trumped up by Loden and Wilson in order to cover their felonious acts.

"If there is only one plausible line of defense, the court concluded, counsel must conduct a 'reasonable substantial investigation' into that line of defense, since there can be no stratigic choice that renders such an investigation unnecessary. The same duty exists if counsel relies at trial on only one line of defense, although others are available. It must include 'an independant examination of the facts, circumstances, pleadings, and laws involved.'" Strickland, supra, at 2061 (quoting Rommel v. Estelle, 590 F.2d 103, 104 (5th Cir 1979).

It should be noted by the Honorable Court that two incidents occurred just prior to the Voir Dire. First, by defense counsel's own admissions, "Jury selection in this case was on a Monday morning, 18 February, 2014." Attorney Biggs filed a Motion for continuance early that morning and argued it before Voir Dire began. Attorney Biggs informed the Court she was not

ready for trial at that time. R.R. 3 at 7. She informed the Court that Appellant had been arrested the previous month for a new felony charge and that she believed the respective parties would be able to settle the cases after the new case was filed in. Id. She informed the Court that Asst. D.A. Wavrosa and she had spoken the previous Friday afternoon at about 3 p.m., and until that time, she had been unaware the State intended to take Mr. Piland's assault on public servant case to trial on Monday the 18th. Id. at 8. She argued that it would be efficiency and judicial economy (on the part of the court) and in the best interest of Mr. Piland to wait on a possible trial in the assault on public servant case until the new (and other) cases was filed in. Id. She pointed out that several other attorneys (including the writer) had trial cases that were set before hers, and thus she was baffled as to why Appellant's case was going to trial this day when other, older cases were listed on the docket before Appellant's case. Id. The Court denied her Motion. Id. at 9." (Brief for Appellant for Direct Appeal, App. A, pgs. 6-7).

The second issue was that just before Voir Dire the defense attorney was notified, when the prosecuting attorney asked the jury if any of them could not, in good conscience, sentence a person to twenty years in prison. Having been led to believe her client was facing a 3rd degree felony with no enhancements, defense counsel objected to this question. Both attorneys were called to the bench, and in conference during Voir Dire the prosecuting attorney notified defense counsel of his intention to seek enhancement. He stated before the trial judge that a copy of the enhancement paragraph had been faxed to defense counsel's office at 8 a.m. that morning. Voir Dire began at 8:30 a.m. The trial judge allowed it.

Thus, in all honesty, the Petitioner states his defense counsel's ineffec-

-18-

tiveness was due to misrepresentations by the Asst. District Attorney, and the bias shown by the trial judge, Judge Gossett. In fact, the trial was so rushed that even the indictment before the Court was without 'mens rea" and added last minute enhancements. (R.R. 4 at 164).

"Criminal defense counsel must have firm command of facts of case as well as governing law before he can render reasonably effective assistance of counsel." Ex Parte Welborn, 785 S.W.2d 391 (Tx.Crim.App. 1990).

Defense Counsel had not even read the entire indictment to see if it met the minimum standards of the law. Thus, she was ineffective for failure to object to the defective indictment even before this case went to trial. The State would have been forced to either dismiss the indictment and start over, or attempt to amend and interleniate the indictment, giving defense counsel added time to adjust to the added enhancement paragraph and investigate further into the case. "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's desire to plead guilty." Rompilla v. Beard, 125 S.Ct. 2456 (2005).

"When determining whether defendant received effective assistance of counsel in violation of the 6th Amendment, benchmark must be whether counsel's conduct so undermined proper functioning of adversarial process that trial cannot be relied on as having produced a just result." Rogers v. Israel, 746 F.2d 1288 (___ Cir 1984); Strickland, supra, at 2064.

ISSUE 6: Was defense counsel ineffective when she, herself, admits she was ineffective at trial due to Trial Judge's actions?

"First defendant must show that counsel's performance was deficient, requiring showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed defendant by the Sixth Amendment..." Id., at 2052.

The Petitioner has shown that defense counsel failed to even read the indictment against her client, which had failed to give mandatory "mens rea" in the charge brought against her client. Then she failed to Motion for Jury Instruction on the Lesser-Included Offense of Resisting Arrest. The Jury would most probably had found the Petitioner guilty of only the lesser offense when they heard the testimony from defense witnesses.

"...second, defendant must show that deficient performance prejudiced the defense by showing the counsel's errors were so serious as to deprive the defendant of a fair trial; a trial whose result is unreliable." Id.

"Harm is presumed because of the possibility that the jury, believing the defendant to have committed some crime but given the option only to convict him of the greater offense, may have chosen to find him guilty of that greater offense, rather than to acquit him altogether, even though it had a reasonable doubt that he really committed the greater offense." See Saunders, supra, at 571; Jiminez, supra, at 300. "We cannot say that the [defense attorney's failure to request the trial judge] to instruct on the lesser included offense of resisting arrest did not result in some harm to appellant." Lofton, 6 S.W. 3d at 800.

"Counsel, however, can also deprive a defendant of the right to effective assiatance of counsel simply by failing to render 'adequate legal assistance'" Strickland, supra, at 2064; Cuyler v. Sullivan, 100 S.Ct. at 1716, 1719.

The Petitioner has met both prongs of the Strickland standard as set out

by the U.S. Supreme Court, and this case does warrant a reversal and the Petitioner afforded a new trial.

ISSUE 7: <u>Prosecutorial Misconduct - Prosecutor failed to give Defense Counsel full notice of enhancement charge until half hour prior to Voir Dire. Then it was faxed to Defense Counsel's office. Was this prosecutorial misconduct?</u>

"In <u>Nemet v. U.S.</u>, 83 S.Ct. 1651 (1963), the recognized that even in the absence of an objection, trial errors may require reversal of a criminal conviction on either of two theories: (1) that it reflected prosecutorial misconduct; or (2) that it was obviously prejudiced to the accused." Id., at 1154-1155.

In the instant case at bar, the prosecutor was in negotiations with the defense attorney at about 3 p.m. on Friday, 15 February, 2014. Then on Monday, at 8:30 a.m. on 18 February, 2014, the Court announces jury selection was to begin immediately. The State announced they were ready. Even though two days earlier they were actively pursuing a plea deal. The situation appears that the Prosecutor and Trial Judge were in a conspiracy to ensure they obtained a conviction at all costs. To further prove this assertion, the Petitioner shows the statement contained in the direct appeal Appellant Brief that the defense brought to the Court an objection that the indictment against the Petitioner was faulty in that it contained no "mens rea." Then to further prove the Prosecutor was acting deceptively, he faxed an enhancement paragraph to defense counsel's office at 8:00 a.m. while she is in the Courtroom being told this 3rd degree felony case would proceed to trial immediately. And the Trial Judge sat back pushing it through his courtroom. Knowing it denied Petitioner effective counsel at trial, and also denied him due process due to the fact the indictment was faulty. "Failure of an indict

-21-

ment to allege a culpable mental substance, is a defect of substance." **Prudhome v. State**, 989 S.W.2d 852 (Tex.App.-Houston [14 Dist] 1999).

"In analyzing whether a charging instrument provides adequate notice, a court must identify the elements of an offense, such as forbidden conduct, <u>required culpability</u>, if any, any required result, and negation of any exception to the offense;..." **Barbernell v. State**, 257 S.W.3d 248 (Tx.Crim.App. 2008).

"Voluntariness need not be pled in indictment unless it is essential element of offense charged." V.T.C.A. Penal Code §§ 6.01(a), 6.02(b); **Barbernell v. State**, 533 S.W.2d 806 (Tx.Crim.App. 1976).

"An indictment which fails to allege all elements of an offense is <u>VOID</u>." **Ex Parte Seaton**, 580 S.W.2d 593 (Tx.Crim.App. 1979).

"On occasion, criminal statutes-including some requiring proof of willfullness have been understood to require proof of an intentional violation of a known legal duty, i.e., specific knowledge by the defendant that his conduct is unlawful. But where that construction has been adopted, it has been invoked only to ensure that the defendant acted with a wrongful purpose." **Liparota, v. U.S.**, 105 S.Ct. 2084, 2088 (1985).

In winship, the Court held for the first time that the due process clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of <u>every fact</u> necessary to constitute the crime to which he is charged." **Jackson v. Virginia**, 99 S.Ct 2781, 2787 (1979); **In Re Winship**, 99 S.Ct. 1073 (1979).

One of the essential elements to any assault charge is whether it was "intentionally, knowingly, and willfully" committed. This essential element was not presented on the indictment, and as such, the grand jury did not take this into consideration before it ordered the Petitioner to stand trial

-22-

for it. The law is explicit. And the prosecutor has in fact broken the laws of this State with impunity, as the Trial Judge allowed the trial to with a VOID indictment.

"Where there is serious doubt and continuing prosecutorial misconduct that undermines the reliability of the fact finding process or, even worse, tranforms the trial into a farce and mockery of justice, resulting in deprivation of fundamental fairness and due process of law, the defendant is entitled to a new trial, even though few objections have been made." Berger v. U.S., 55 S.Ct. 629, 631-633 (1935); Ruth v. State, 552 S.W.2d 517 (Tex.Cr.App. 1975); Kerns v. State, 550 S.W.2d 91 (Tex.Cr.App. 1977).

The acts on the part of the prosecutor denied the Petitioner a fair and unbiased trial. His acts also effected the performance of the defense counsel. As such, the Petitioner's conviction should be reversed, and the Petitioner granted a new trial.

## PRAYER FOR RELIEF

ALL PREMISES CONSIDERED, the Petitioner prays this Honorable Court Order the reversal of this conviction due to a void indictment, judicial abuse of discretion, legal and factual insufficiency of the evidence pursuant to Penal Code § 22.01, and/or ineffective assistance of defense counsel, which violated the Petitioner's Constitutional rights to due process and equal protection under the law and effective assistance of counsel.

The reasons for granting this Review are:

(a) As shown in caselaw, the decision of the Sixth Court of Appeals does conflict with other Courts of Appeals on the same issue;

(b) The Court of Appeals has decided important questions of law in a way that conflicts with the Court of Criminal Appeals and the United States Supreme Court;

-23-

(c) The Court of Appeals has disagreed on a material question of law necessary to the Court's decision; and

(d) The Court of Appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeal's power of supervision. (See Rule 66.3, T.R.A.P.).

As such, the Petitioner prays this Honorable Court GRANT the Petitioner:

(1) a reversal of the District Court's conviction of Petitioner; and:

(2) render a judgement of acquittal;

(3) vacate Petitioner's sixteen year sentence in TDCJ-CID;

(4) order Petitioner's release from prison and/or State custody; and

(5) remand this case to the trial court as this Court may deem necessary.

IT IS SO PRAYED

Respectfully Submitted, _James Earl Piland_ #1919190
James Earl Piland, TDCJ-CID #1919190
Alfred Stringfellow Unit
1200 F.M. 655
Rosharon, Texas 77583

## VERIFICATION

I, James Earl Piland, Petitioner, pro-se, in the above Petition for Discretionary Review, do hereby verify and declare under penalty of perjury, that the statements contained herein are true and correct. Affirmation made pursuant to 28 U.S.C. § 1746.

EXECUTED on this the 13 day of March, 2015.

Respectfully Submitted, _James Piland_ #1919190
James Earl Piland, TDCJ-CID #1919190
Petitioner, Pro-Se

-24-

No. 06-14-00063-CR

IN THE COURT OF APPEALS
FOR THE SIXTH APPELLATE DISTRICT OF TEXAS
TEXARKANA, TEXAS

---

JAMES EARL PILAND VS. THE STATE OF TEXAS

---

On Appeal From
4th Judicial District Court, Rusk County, TX
Trial Case No. CR 13-214
Judge Gossett, presiding

---

**BRIEF FOR THE APPELLANT**

---

**T.W. DAVIDSON**
SBN: 24026694
329 S. Fannin Ave.
Tyler, Texas 75702
(903) 535-9600 (tel.)
(903) 533-9394 (fax)
E-mail: ThadJustice@yahoo.com

ATTORNEY FOR THE APPELLANT

No. 06-14-00063-CR

IN THE COURT OF APPEALS
FOR THE SIXTH APPELLATE DISTRICT OF TEXAS
TEXARKANA, TEXAS

---

JAMES EARL PILAND VS. THE STATE OF TEXAS

---

On Appeal From
4th Judicial District Court, Rusk County, TX
Trial Case No. CR 13-214
Judge Gossett, presiding

---

## BRIEF FOR THE APPELLANT

---

THE HONORABLE TEXARKANA COURT OF APPEALS:

NOW COMES James Earl Piland, Appellant, and respectfully submits his brief for the Appellant, seeking reversal of his conviction for assault against a public servant and vacation of his sentence of sixteen years in prison. This appeal is taken from the 4th Judicial District Court of Rusk County, TX, Judge Gossett presiding, trial case number CR 13-214.

/s/ *T.W. Davidson*
T.W. Davidson

ii

## IDENTITY OF ALL PARTIES AND COUNSEL

The parties in this case are:

1. The Appellant in this case is James Earl Piland, currently incarcerated in T.D.C. Mr. Piland was represented at the trial level by **Allison Biggs,** of Henderson, TX. Appellant is represented on appeal by **T.W. Davidson**, of Tyler, TX.

2. The Rusk County District Attorney's Office was represented at the trial level by Mr. Richard Kennedy, of Tyler, TX, and Zack Wavrusa, of Troup, TX. Either Mr. Kennedy or Mr. Wavrusa, or both, represent the State on appeal.

*S/S  T.W. Davidson*
T.W. Davidson

# TABLE OF CONTENTS

IDENTITY OF ALL PARTIES AND COUNSEL........................ iii

TABLE OF CONTENTS. ............................... iv

INDEX OF AUTHORITIES............................ v

ABBREVIATIONS.............................. v

STATEMENT OF THE RECORD. ..................... v

STATEMENT OF THE CASE. ....................... 1

ISSUES PRESENTED. ............................ 3

      Issue Presented #1: *Did the jury have sufficient evidence to convict the Defendant as charged in the State's indictment?*

      Issue Presented #2: *Is the indictment so flawed that the jury convicted the Defendant of something that is not the charged offense under the TX Penal Code?*

      Issue Presented #3: *Did Defense Counsel engage in ineffective assistance of counsel to Mr. Piland by failing to object to the materially defective indictment before trial?*

STATEMENT OF FACTS .    .      .    .    .    .    .    .    . 2-8

SUMMARY OF ARGUMENT...................... 9

ARGUMENT AND AUTHORITIES. ...................... 9-14

PRAYER. ......................... 14

CERTIFICATE OF SERVICE. ....................... 15

# INDEX OF AUTHORITIES

## *Cases:*

*Bender v. State,* 758 S.W.2d 278, 280(Tex. Crim. App. 1980) . . . . 10

*Byrd v. State,* No. PD-0738-10 (Tex. Crim. App. 2011) . . . . . . 12

*Compton v. State,* 202 S.W.3d 416 (Tex. App. –Tyler 2006, no pet.) . . . . 13

*Dinkins v. State,* 894 S.W.2d 330 (Tex. Crim. App.) *cert den'd,* 516 U.S. 832, 133 L.Ed. 2d 59, 116 S. Ct. 106 (1995) . . . . . . . . 11

*Flores v. State,* 102 S.W.3d 328, 330 (Eastland, March 2003,PDR denied) . . . . . . . . . . . . 8

*Keller v. State,* 125 S.W.3d 600, 604 (Tex. App. - Houston [1st Dist.] 2003, pet. dism'd) . . 10

*Jackson v. State,* 718 S.W.2d 724, 725 (Tex. Crim. App. 1986) . . . . 12

*Jackson v. Virginia,* 443 U.S. 307 (1979) . . . . . . . . 12

*Malik v. State,* 953 S.W.2d 234 (Tex. Crim. App. 1997) . . . . . 12

*Massey v. State,* 777 S.W.2d 739, 740 (Tex. App. - Beaumont 1989, no pet.). . . . 10

*Rylander v. State,* 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) . . . . . 14

*Stobaugh v. State,* 421 S.W.3d 787 (Tex. App.–Fort Worth 2014) . . . . 11

*Storr v. State,* 101 S.W.3d 611 (Tex. App. –Houston [14th Dist.] 2003, pet. ref'd) . . 14

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984) . . 14

*Studer v. State,* 799 S.W.3d 263 (Tex. Crim. App. 1990) . . . . . 11

*Megan Winfrey v. State,* 393 S.W.3d 763 (Tex.Crim.App. 2010) . . . . 10

*Richard Winfrey v. State,* 393 S.W.3d 875 (Tex. Crim. App. 2010) . . . 10-11

## *Statutes:*

Tex. Code Crim. P. Ann. Art. 42.12, § 21 . . . . . . . . 6, 9

Tex. Pen. Code Ann., Section 22.01 . . . . . . . . 8-14

## *Rules:*

Tex. R. App. P. 34.1 . . . . . . . . . . . . . . vi

Tex. R. App. P. 34.6 . . . . . . . . . . . . . . vi

## ABBREVIATIONS

Amendments to the Texas Rules of Appellate Procedure, effective September 1, 1997, have renamed what was formerly known as the statement of facts, to the "Reporter's Record." Tex. R. App. P. 34.1, 34.6. In this brief, the Reporter's Record will be abbreviated as "RR." What was formerly known as the transcript is now known as the "Clerk's Record." Tex. R. App. P. 34.1, 34.5. In this brief, the Clerk's Record will be abbreviated as "CR".

## STATEMENT OF THE RECORD

The clerk's record (CR) in this case consists of one (1) volume. The reporter's record (RR) pertaining to this Appeal consists of five (5) volumes.

jury must be discharged. The Court overruled both of Attorney Biggs' objections. The jury returned an enhanced punishment verdict of sixteen years in TDCJ, which the Court ordered in its judgment and sentence. Attorney Biggs timely filed a motion for new trial (which the trial court let die on the vine). Attorney Biggs subsequently filed a timely notice of appeal.

## STATEMENT OF FACTS

On the evening of 21 April 2003, Overton Police received a dispatch call of a disturbance at an address in the city. Officer Loden, who had been working as a police officer for less than three years, and who would permanently leave law enforcement employment a week after the facts of this case occurred, responded. RR4 at 12-14. Loden was accompanied by Overton PD Officer Wilson. *Id.* at 17. The Appellant was not in sight and no one would tell the officers where he was. Loden and Wilson searched the area; they heard noise in the nearby woods. Loden spotted the Appellant lying in leaves on the ground. *Id.* at 18. Loden ordered the Appellant to get up and show the officer his hands. Loden also ordered Appellant to come toward him ( Loden). RR 4 at 34. The Appellant complied.

On direct, Loden claimed the Appellant "started to rush toward me." *Id* at 18. On cross, Loden admitted that Appellant walked with a fast-pace walk toward the officer after being ordered by Loden to walk toward him. RR4 at 34. Loden had his gun drawn. *Id.* at 19. Appellant was unarmed. RR4 at 35, 61-62.

Loden informed Appellant that he was going to be detained, that he and Officer Wilson just had some questions for him. *Id* at 19, 35. Loden holstered his weapon. Officer Wilson put a handcuff on one of Appellant's wrists (behind his back) and attempted to handcuff the other wrist. Appellant resisted. *Id.* at 19. After more attempts to handcuff Appellant, Loden warned him that he would spray Appellant in the face with O.C. (a.k.a. Mace) spray if he did not comply. Loden sprayed Appellant in the face, which is severely painful and temporarily blinds and disables the person sprayed. *Id.* at 19, 35, 38, 64. Appellant wiped his eyes and fled.

Loden pursued and caught up with Appellant. Loden grabbed Appellant by the back of the shirt to pull Appellant toward him. RR4 at 20. Loden testified, " . . . as soon as he felt me grab his

2

shirt, he turned around and struck me in the arm." RR4 at 20-21, 35, 68. Loden described the contact as a closed-fist punch to which he did not consent, and which caused him pain. *Id.* at 19. Loden denied ever hitting Appellant with his gun or his flashlight. *Id.* at 39.

Loden: ". . . to keep from getting hit again, I defended myself and struck him [Appellant]." RR4 at 21.

Upon redirect examination later in the trial, the prosecutor asked Loden: "Did you ever put your hands on [Appellant] at all?"

Loden: "No." RR4 at 151.

Prosecutor: "You testified earlier you struck Mr. Piland when you got up closer to the house, right?

Loden: "Yes, sir." *Id.* at 153.

Prosecutor: "How many times did you strike him?"

Loden: "I would say about 3 or 4 times." *Id.*

Prosecutor: "3 or 4 times. Where did you hit him?"

Loden: "I believe it was on the side of his face." *Id.*

Prosecutor: "Okay. It is the only place you him them [sic] was in the face?"

Loden: "Yes, sir."[1]

---

[1] Loden appears to have committed perjury in his testimony. He states that he did not put his hands on the Appellant at all. He denies ever striking Appellant with his flashlight or pistol. But then he testifies that he did strike Appellant. He testifies that he struck Appellant 3 or 4 times. He admits he struck Appellant in the face. The vast majority of this testimony occurred while Loden was under examination by the *State*. And Officer Wilson, at RR4 at 52-53, testified (again for the *State*) that Loden "had Appellant by the arm and had his left arm up behind him," which she confirms again later in the trial. RR4 at 160. Either Loden was truthful when he testified that he did not put his hands on the Appellant at all, or he was truthful when he testified that he struck the Appellant (3 or 4 times). One statement being directly contradictory to the other, however, and one statement or the other thus being true or false but not both, reveals that Loden apparently lied under oath on the stand. Several witnesses for the Defense testified they saw Loden strike Appellant. There is no testimony that anyone other than Loden struck Appellant.

3

Chaos ensued. According to Loden, Appellant's son, Tyler, jumped on Loden's back. Officer Wilson attempted to come to the rescue, but ended up O.C. spraying both Loden and Tyler. *Id.* at 22. Appellant fled into his house.

Backup was called while Loden washed out his eyes so he could see again. Within a few minutes, off-duty Overton PD officer Bob Overman arrived, as well as an officer from another nearby police department. *Id.* at 26. Entry into the house was made. Appellant was arrested and taken to the jail.

Officer Wilson's testimony was generally similar to Officer Loden's. She added that Appellant smelled of alcohol, RR4 at 51, that Appellant was angry, *Id.*, but that when she was attempting to detain Appellant by handcuffing him, she was doing so for "Officer safety," not as an arrest or attempted arrest. *Id* at 51-53, 58, 62. Officer Wilson also testified on direct examination by the State that the initial detention (or attempted detention) of Appellant (which occurred before Appellant struck Officer Loden) was for purposes of investigation. *Id.* at 52-53, 58, 62. Officer Wilson testified that when Appellant fled from the officers after Loden sprayed Appellant with O.C. spray, that Loden did catch Appellant, and "[Loden] had Mr. Piland by the arm and had his left arm up behind him." *Id.* at 53. Officer Wilson also testified (on recross-examination) that " . . . Officer Loden made contact with [Appellant] here and put his hand behind his back . . ." RR4 at 161. Officer Wilson informed Appellant that the officers were there to investigate an incident. *Id.*

Officers Loden and Wilson were the only two officers present when they attempted to detain and question Appellant before Appellant's punch of Officer Loden's arm. No officer testified that Officer Loden (or any other officer) was attempting to arrest Appellant, or was in the process of arresting Appellant, when Appellant struck Officer Loden in the arm. Upon review of all the transcripts in this case, no other witness did either.[2]

---

[2]Appellant counsel has read and analyzed the trial transcripts. The Defense case, in terms of its direct examination witness testimony, contains little information and little relevance regarding answers to the issues presented in this appeal. Therefore, for purposes of brevity and logic, only a

4

## The Defense Case

Attorney Biggs called several witnesses to the stand on behalf of Appellant. The first was Rebecca Piland. The second was Wesley Watkins. The third was Tyler Chiasson. A summation of their testimony is as follows:

### Rebecca Piland

Mrs. Piland is the Appellant's wife. Tyler Chiasson is her son. Wesley is essentially an adopted son. RR4 at 88-90. She denied that there was ever a physical altercation between the boys and her husband on the evening in question, but stated that she called the police because her husband (Appellant) directed her to do so. *Id.* at 91-92. She testified that the police grabbed Appellant out of the woods, and specifically that the "police guy" [Loden], he grabbed my husband" . . . and "threw him [Appellant] against the boat." *Id.* at 92-93, 106. She testified that Officer Loden sprayed her husband (with pepper spray) and struck him with an object that the officer had in his hand. *Id.* at 93-94. She also testified that prior to the evening in question, her husband had no injuries on his face but was bruised everywhere (including the cut on the bridge of his nose) upon his return from the jail. *Id.* at 99-102. Mrs. Piland testified that she did not feel that Mr. Piland was a threat to any of her children, *Id.* at 112, and that "the cop" [Loden] was the first aggressor (against Appellant), *Id.* at 112, 114.

### Wesley Watkins

He injured his knee that day playing basketball, causing it to bleed. RR4 at 116. He and Tyler had a verbal disagreement with Appellant that was not physical. *Id.* at 117-119. He provided the police with the same information. *Id.* at 119-120. One of the police officers, a male, hit Mr. Piland with a flashlight on the nose.[3] *Id.* at 120. Appellant, while being assaulted by the male police officer, threw his hands up to guard himself. *Id.* at 121. Prior to the evening in question, Mr. Piland did not have a gash on his nose. *Id.* at 122. The police never said "You're under arrest" prior to Mr.

_____

brief summary of Defense witness testimony is included in the Statement of Facts in this brief.

[3]The only male police officer on the scene at this time was Officer Loden.

5

Piland going into his home to wash the pepper spray out of his eyes. *Id.* at 125. Never saw his father strike Loden. *Id.* Did see Officer Loden ("the male") [ officer] beating the Appellant. *Id.* at 129. Did see Officer Loden pepper spray the Appellant. *Id.* at 132-133.

*Tyler Chiasson*

Son of Appellant, mother of Rebecca Piland, 20 years old. RR3 at 135. Wesley injured his knee playing basketball that day. *Id.* at 136. He and Wesley had a verbal disagreement with Mr. Piland. *Id.* at 138- 141. The police officers were looking for Mr. Piland; he came out of the woods, hands at his side. *Id.* at 142-43. Officer Loden charged Mr. Piland, shoved him and maced him. *Id.* at 143. Was attempting to defuse the situation when he (Tyler) was maced by Officer Wilson. *Id.* at 14, 148. Loden was the first aggressor. *Id.* at 145. Mr. Piland attempted to raise his hands (after being maced) to keep from getting beaten by Loden, a defensive maneuver. *Id.* at 146-147. Loden pushed Mr. Piland and dragged him. *Id.* at 147.

*Defense Attorney Actions*

Jury selection in this case was on a Monday morning, 18 February 2014. Attorney Biggs filed a motion for continuance early that morning and argued it before voir dire began. Attorney Biggs informed the Court she was not ready for trial at that time. RR3 at 7. She informed the Court that Appellant had been arrested the previous month for a new felony charge and that she believed the respective parties would be able to settle the cases after the new case was filed in. *Id.* She informed the Court that ADA Wavrusa and she had spoken the previous Friday afternoon at about 3 p.m. and until that time, she had been unaware the State intended to take Mr. Piland's assault on public servant case to trial on Monday the 18th. *Id.* at 8. She argued that it would be efficiency and judicial economy (on the part of the Court) and in the best interest of Mr. Piland to wait on a possible trial in the assault public servant case until the new (and other) case was filed in. *Id.* She pointed out that several other attorneys (including this writer) had trial cases that were set before hers, and thus she

was baffled as to why Appellant's case was going to trial this day when other, older cases were listed on the docket before Appellant's case.[4] *Id.* The Court denied her motion. *Id.* at 9.

At the close of the State's case, Attorney Biggs made an oral motion to quash the indictment for a fatal defect in the indictment. RR4 at 163. Attorney Biggs argued that the indictment fails to allege any type of culpable mental state and therefore is fatally defective. Attorney Biggs stated that because the necessary *mens rea* ("Willingly and Knowingly") is an essential element of the offense of Assault on Peace Officer under the Penal Code, and because that *mens rea* is missing from the indictment, constitutional error occurred against Appellant. RR4 at 163. The State objected.[5] The Court overruled her motion. RR4 at 164.

*The Indictment*

---

[4] Attorney Biggs' unexpected surprise trial setting is not unusual in Rusk County. For nearly a decade I volunteered to be on the appointment list for trial lawyers in the 4th District Court. For most of those years I did not mind when the State would call me on a Friday to tell me or ask me about taking one of my cases to trial the following Monday, or even two cases in the same week. This became a common occurrence because I am a trial lawyer, I fight when pressed, and my clients wanted me to fight on their behalf. Eventually I did come to mind, however, because there often would be many cases that were far older than mine, with the same experienced defense attorneys at their helm, that were not pushed (or made) to go to trial by either the State or the Court. I eventually felt this was inappropriate and unfair. Either everyone gets treated equally, or no one does. I removed myself from the appointment list. I expect this appeal is my last appointed criminal case in Rusk County.

[5] In its objection, the State referred the trial court to a case entitled "Flores v. State out of Eastland in 2003" and cited from that case. The State did not provide the case to either the Court or defense counsel. Appellant counsel has examined the case and believes that case, which deals with felony murder, has no relevance to the issues regarding the defective indictment in the case at hand. Specifically, the Flores court noted that the felony murder rule dispenses with the necessity of proving *mens rea* accompanying the homicide itself; the underlying felony supplies the culpable mental state. *Flores v. State,* 102 S.W.3d 328, 330 (Eastland, March 2003, PDR denied). This is not the case with Assault of Peace Officer; there is no underlying felony in the charge at hand. The State is required to prove beyond a reasonable doubt all elements of the charged offense, including the *mens rea.*

7

A Rusk County grand jury indicted the Appellant on 5 September 2013. The key portion of the Indictment relevant to this appeal lists as follows:

> ... [T]hat James Earl Piland ... did then and there cause bodily injury to Brad Loden by striking the said Brad Loden with the defendant's fists while the said Brad Loden was trying to arrest the defendant, and the said Brad Loden was then and there a public servant ...

*Assault (Public Servant)–TX Penal Code statute, relevant portions thereof:*

Texas Penal Code Annotated, Section 22.01, Assault, reads as follows:

> (a) A person commits an offense if the person:
>
> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
>
> (2) intentionally or knowingly threatens another with bodily injury, including the person's spouse; or
>
> (3) intentionally or knowingly causes physical contact with another when the person knows of should reasonably believe that the other will regard the contact as offensive or provocative.
>
> (b) an offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against:
>
> (1) a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant;

*The Jury Charge*

> Appellant concedes the jury charge in this case correctly tracks the assault statute. The indictment does not. The indictment lists no *mens rea*, an essential element of the charged offense.

## SUMMARY OF ARGUMENT

The indictment is materially defective and does not state an offense under the TX Penal Code, much less the one charged against the Appellant.

The State failed to present evidence by which any reasonable, rational jury could convict Mr. Piland of the charged offense.

Appellant's lawyer, Attorney Biggs, committed ineffective assistance of counsel by not objecting to the materially defective indictment in this case before the trial date. This caused the Appellant to be convicted and sentenced to sixteen years in TDCJ.

8

## ISSUE PRESENTED #1

*Did the jury have sufficient evidence to convict the Defendant as charged in the State's indictment?*

## CONCISE ANSWER

No. Not a single witness at trial testified or presented evidence, directly or indirectly, that Officer Loden was attempting to arrest Mr. Piland at the time Mr. Piland struck Officer Loden. Secondly, Officer Loden did not testify that he suffered bodily injury as required by Section 22.01 (a)(1) of the statute in question. Third, no other witness did either. Fourth, multiple witnesses, including the police witnesses, testified that Officer Loden pepper-sprayed Mr. Loden in the face, in the eyes, blinding him, causing him agony, before Mr. Piland struck Loden in the arm. Fifth, multiple witnesses testified that Mr. Piland raised his arms defensively after being pepper-sprayed and blinded, after being put by Loden into a state of agony. If Mr. Piland struck Officer Loden, there was no knowing or intentional or negligent motive in Mr. Piland's mind, (disregarding for the moment that the indictment critically fails to list this necessary element of the offense.) Mr. Piland was a man in agony, blinded and flailing. Contra, Officer Loden did not suffer bodily injury, nor was he attempting to arrest Mr. Piland at the time of the alleged offense. Officer Loden responded by beating Mr. Piland in the face, an illegal assault against a blind, helpless, agonized man. Officer Loden (for whatever reason) is no longer a police officer.

## LAW AND ARGUMENT

No person can be convicted of a felony except upon the verdict of a jury duly rendered and recorded, unless he, upon entering a plea has in open court in person waived his right of trial by jury in writing. TEX. CODE CRIM. PROC. Art. 1.15 (Vernon Ann. 2005). This case was a trial, not a plea.

It shall be necessary for the state to introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment. TEX. CODE CRIM. PROC. Art. 1.15 (Vernon Ann. 2005). A person cannot be convicted without sufficient evidence to support that conviction. Tex. Code Crim. Proc. Art. 1.15 (Vernon Ann. 2005), *Bender v. State*, 758 S.W.2d 278, 280(Tex. Crim. App. 1980), *Keller v. State*, 125 S.W.3d 600, 604(Tex.

9

App. - Houston [1st Dist.] 2003, pet. dism'd), *Massey v. State*, 777 S.W.2d 739, 740(Tex. App. - Beaumont 1989, no pet.). Here, there is insufficient evidence by which the jury could convict Mr. Piland, for all the reasons stated in the Brief Answer above, the most critical ones being as follows:

> *Not a single witness testified that Officer Loden was attempting to arrest Mr. Piland at the time Mr. Piland allegedly struck Loden. Not one.*

> *There was no other evidence, direct or indirect, circumstantial or other, by which any reasonable jury could rationally–could legally--find that Officer Loden was struck by Mr. Piland while Loden was attempting to arrest Mr. Piland. None.*

> *Officer Loden himself testified that at the time Mr. Piland struck him (Loden), he and Officer Wilson were detaining Mr. Piland for questioning. That's it. No arrest. No attempt at arrest. Officer Wilson's testimony is the same. No other witness testified differently.*

> *Officer Loden did not testify that he suffered bodily injury from Mr. Piland, nor did any other witness.*

A conclusion reached by speculation . . . is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. *Megan Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). If the evidence raised at trial presents "only a suspicion of guilt, even a strong one, then that evidence is insufficient [to convict.]" *Richard Winfrey v. State*, 323 S.W.3d 875, 882 (Tex. Crim. App. 2010). See also, *Stobaugh v. State*, 421 S.W.3d 787 (Tex.App.–Fort Worth 2014)

Here, the State failed to put on *any* evidence that Officer Loden was attempting to arrest Mr. Piland at the time that Mr. Piland struck Officer Loden in the arm. In fact, *all* of the State's evidence reveals that Loden was attempting to detain Mr. Piland for questioning, not attempt to arrest him, at the time Mr. Piland struck Loden. None of the Defense evidence contradicts this. There is no evidence in the record that Officer Loden was attempting to arrest Mr. Piland at the time that Mr. Piland struck Officer Loden. The jury's verdict is thus factually impossible, legally impermissible, and must be reversed.

## ISSUE PRESENTED #2

*Is the indictment so flawed that the jury convicted the Defendant of something that is not the charged offense under the TX Penal Code?*

10

## CONCISE ANSWER

Yes. As noted earlier in this brief, the Assault Public Servant statute specifically lists a *mens rea* element–that the Defendant committed assault public servant if he "intentionally, knowingly, or recklessly causes bodily injury to another." See Tex. Pen. Code Section 22.01 (a)(1). The *mens rea* is missing from the indictment in this case. The jury was not required to prove beyond a reasonable doubt all the elements of the correct and required statute concerning the offense for which the Appellant was arrested, indicted and tried by jury.

## LAW AND ARGUMENT

The State is not relieved of its burden of proving *mens rea* in the case at hand. The Assault (Peace Officer) statute specifically lists *mens rea* as a critical element therein. The indictment was and remains constitutionally defective because it fails to state any mens rea, much less the correct one, thus creating a non-existent offense in the TX Penal Code. This is reversible error.

An allegation of an essential culpable state is an element of the offense. *Dinkins v. State*, 894 S.W.2d 330, 338 (Tex.Cr.App.) *cert den'd*, 516 U.S. 832, 133 L.Ed. 2d 59, 116 S. Ct. 106 (1995). Failure to include a culpable mental state is usually a defect of substance. *Studer v. State*, 799 S.W.2d 263 (Tex.Cr.App. 1990). But normally, when there is a defect in substance, there is a failure to charge a purported offense. See *Jackson v. State*, 718 S.W.2d 724, 725 n.1 (Tex. Crim. App. 1986). Such is the case here. The jury convicted Appellant of something but that something is not Assault Public Servant, Section 22.01 of the Penal Code. It is not anything. See *Byrd v. State*, No. PD-0738-10 (Tex. Crim. App. 2011).

In this case, the evidence presented at trial is legally insufficient under the rules outlined by *Jackson v. Virginia*, 443 U.S. 307 (1979), when measured by the elements of (the correct) offense as defined in a hypothetically correct jury charge as required by *Malik v. State*, 953 S.W.2d 234 (Tex.Crim.App. 1997). Another way to examine this issue is to simply ask this: could the State, because of the defective indictment, the lack of *mens rea* element, the fact that the offense charged is not an offense under the penal code, the lack of evidence presented by any witness to convict the Appellant of the offense as listed in the indictment, etc., try Appellant again for the actual offense with

11

a proper indictment? Appellant skirts a direct answer (much like pleading the 5th at the trial level), but if that answer is yes, then reversible error has occurred. *Byrd* at 21. Appellant asserts that it has occurred here. The State has failed to prove beyond a reasonable doubt that Mr. Piland committed the charged offense, notwithstanding that the charged offense as written in the indictment is not actually an offense under Texas law.[6]

## ISSUE PRESENTED #3

*Did Defense Counsel engage in ineffective assistance of counsel to Mr. Piland by failing to object to the materially defective indictment before trial?*

## CONCISE ANSWER

Yes. Attorney Biggs was forced to go to trial with little notice. She filed a motion for continuance. She stated she was not ready for trial. She was caught off-guard, caught by surprise, and proceeded to trial involuntarily after the Court denied her motion. She flat-out missed that the indictment was materially and fundamentally defective. She did not raise the issue before the trial date. Had she done so, there would not have been a trial with that indictment as written. The consequence was that Appellant was convicted and sentenced to sixteen years in prison.

## LAW AND ARGUMENT

Trial counsel was ineffective for not objecting to the defective indictment in this case before trial.[7] Had Attorney Biggs done so, the State would have been required, at a minimum, to either dismiss the indictment and start over or attempt to amend and interleniate the indictment, which Mr. Piland would have certainly objected to. Either way, trial would not have occurred with a defective

---

[6]An error, just to be certain, that Appellant does not waive here or anywhere else.

[7]I have known Attorney Biggs for many years. I consider her to be one of the finest people I know, and one of the finest lawyers I know. I know of no better in either category. I consider to be a close friend. As such, it was with extreme turmoil that I discovered the ineffective assistance issue while reading the transcripts, and it is with extreme reluctance-on a personal basis, not a professional one-that I raise it in this brief. I discussed the matter with Attorney Biggs beforehand. She unhesitatingly advised me to raise the issue. "It's the right thing to do." That's the kind of person and lawyer she is.

12

indictment that fails to state a material, critical element of the offense charged against Mr. Piland, the *mens rea* requirement.

The jury found Mr. Piland guilty of something not an offense under the TX Penal Code. This would not have occurred had trial counsel objected to the defective indictment before trial. Further, there is no rational way this failure to object was a rational, reasonable trial strategy or tactic. It was simply a mistake, and not a small one, a mistake that occurred because Attorney Biggs was not ready for trial (and said so), was pushed to trial with no reasonable notice (and said so), and was overruled by the trial court on her motion for continuance.

In most cases, ineffective assistance is not a viable attack on a conviction at the appellate level because the record is usually not sufficiently developed for that purpose. Appellant concedes this. There are, however, limited areas when ineffective assistance is a viable attack at the appellate level. See *Compton v. State*, 202 S.W.3d 416 (Tex. App. - Tyler 2006, no. pet.)(a conviction which occurred for an offense indicted after the statute of limitations ran was ineffective). This case is one of them.

Ineffective claims are analyzed using a two-pronged test, first that the representation fell below an objective standard of reasonableness, and second, that there is a reasonable probability that, but for the unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). The Appellant bears the burden of proving his lawyer was ineffective. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Generally, courts give great deference to the motivations and plans of counsel. *Young v. State*, 991 S.W.2d 835, 837-38 (Tex. Crim. App. 1999). The Appellant must overcome the presumption that trial counsel's strategy was sound and affirmatively demonstrate the alleged ineffective assistance of counsel. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

In this case, there is no objective reasonable motivation. plan, tactic or strategy that can be envisioned by allowing a client to be taken to trial with a defective indictment that does not constitute an offense under TX law. This is not a case of second-guessing a trial strategy. It is not a case where

13

the record needs to be developed and expanded through a post-conviction *writt of habeas corpus*. [8] *Storr v. State* 101 S.W.3d 611, 613(Tex. App. - Houston [14th Dist.] 2003, pet. ref'd). Rather, this is a case where Attorney Biggs was shoved into trial with little prior notice, without time to prepare, under a materially defective indictment which the State had months to correct beforehand but never did. Attorney Biggs missed the indictment. Attorney Biggs missed that it is fatally flawed. Had Attorney Biggs noticed the defective indictment before the trial date, she would have objected and forced the State to either dismiss it or attempt to amend and interleniate it.

The Appellant suffered a conviction and sixteen year prison sentence because of Attorney Biggs' error. Without that error by trial counsel, there would have been no trial under the existing indictment. Appellant would not be in prison. The Appellate Court would not be reading this brief. The rules of *Strickland* have been met.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, and for the reasons cited herein or for any other which this Court may find, Appellant asks the Court to:

(1) reverse the District Court's conviction of Appellant;

(2) render a judgment of acquittal;

(3) vacate Appellant's sixteen year sentence in TDCJ;

(4) order Appellant's release from prison and/or State custody; and

(5) remand this case to the trial court as this Court may deem necessary.

Respectfully submitted,

*/s/ T.W, Davidson*
T.W. DAVIDSON
SBN: 24026694
329 S. Fannin Ave.
Tyler, TX 75702
(903) 535-9600 (T)
(903) 533-9394 (F)

---

[8]Although Appellant reserves the right to do so if necessary on down the road.

14

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this pleading has been mailed by first-class mail to the parties below, as well as emailed to State counsel, this 25ᵗʰ August 2014.

ADA Richard Kennedy                                                 *COUNSEL FOR THE STATE*
Rusk County District Attorney's Office
Rusk County Courthouse, 3ʳᵈ Floor
Henderson, TX  75652

ADA Zack Wavrusa
Rusk County District Attorney's Office
Rusk County Courthouse, 3ʳᵈ Floor,
Henderson, TX 75652

Mr. James Earl Piland                                                        *APPELLANT*


                          */s/ T.W. Davidson*
                          T.W. DAVIDSON

James Piland # 01919190
Stringfellow Unit
200 F.M. 655
Rosharon, Texas 77583

Court of Criminal
ATTN: Court Clerk
PO Box 12308 Capital
Austin, TX 78711

